UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Daniel Hiltz, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiff,<br><br>　　- against -<br><br>Inventure Foods, Inc.,<br><br>　　　　　　　　Defendant | 1:21-cv-03140<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

　　1.　　Inventure Foods, Inc. ("defendant") manufactures, markets, labels and sells "Onion Rings Snacks" under the TGI Fridays brand ("Product").



2. By labeling the Product as "Onion Snacks," consumers will get the false impression the Product contains onions as an ingredient in an appreciable, non *de minimis* amount.

3. Instead, the Product is fried corn meal (first ingredient) with added onion powder, a seasoning, the third most predominant ingredient.

> **INGREDIENTS:** CORN MEAL, SOYBEAN OIL AND/OR SUNFLOWER OIL, ONION POWDER, RICE FLOUR, SALT, WHEY, MONOSODIUM GLUTAMATE, BUTTERMILK POWDER, CARAMEL COLOR, NATURAL FLAVORS, CORN SYRUP SOLIDS, MALTODEXTRIN, SODIUM CASEINATE, LACTIC ACID, DISODIUM INOSINATE, DISODIUM GUANYLATE, COLORS (YELLOW 5 LAKE, RED 40 LAKE, TURMERIC EXTRACT), ARTIFICIAL FLAVOR, CALCIUM CARBONATE.

4. The second most predominant ingredient are vegetable oils, presumably used to "bake" the corn meal.

5. Onion powder is made from dehydrated, ground onions and has a flavor ten times stronger than real onions.

6. Onion powder lacks the depth of real onion flavor because it is made with *parts* of an onion, i.e., the bulb.

7. Since each part – bulb, root, stem, and skin – contributes unique flavor and aroma compounds, onion powder is unable to provide the "oniony" flavor appreciated by consumers.

8. The ingredient list also reveals natural and artificial flavors, which consist of compounds which attempt to mimic the taste of onions.

9. Onion powder and onion flavor are unable to match the flavor from real onions because they lack the delicate balance of flavonoids critical to onions.

10. Consumers will incorrectly believe the faux-onion taste is due to having more onion ingredients when this is not true.

11. Onion powder and onion flavor also lack the health and nutrition benefits that are provided by real onions.

12. Onions contain fiber and dietarily significant amounts of vitamins C and B6, folate and potassium.

13. Onion powder contains proportionally less of these vitamins and nutrients, while onion flavor contains none.

14. The Product contains caramel coloring which makes it a darker brown, creating the false impression of consumers the misleading impression of *more* onions, since the color is a darker brown than it otherwise would be, similar to the color of onions.

15. Though the Product's front label states "Natural and Artificially Flavored," this is in a very small font size, and difficult for consumers to view.




16. Moreover, "Natural and Artificially Flavored" fails to tell consumers the Product substitutes onion powder for real onions.

17. Should consumers see the "Natural and Artificially Flavored" statement, they will pay it little mind, because most snacks have added flavors.

18. For example, many kinds of potato chips are labeled as natural or artificially flavored.

19. Yet such statements do not cause consumers to believe they are not buying potato chips.

20. Defendant knows consumers will pay more for the Product because the front label only states "Onion Snacks" instead of "artificial onion flavored fried corn snacks" or "does not have any real onions and does not taste like real onions."

21. The Product contains other representations which are false and misleading.

22. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes and features of the Product, relative to itself and other comparable products or alternatives, such as soap and water.

23. The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

24. Defendant sold more of the Product and at a higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

25. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

26. The Product is sold for a price premium compared to other similar products, no less than $2.19 per bag, higher than it would otherwise be sold for, absent the misleading representations and omissions.

## Jurisdiction and Venue

27. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

28. Diversity exists because Plaintiff and Defendant are citizens of different states.

29. Upon information and belief, the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

30. Plaintiff Daniel Hiltz is a citizen of Illinois.

31. Defendant Inventure Foods, Inc. is a Delaware corporation with a principal place of business in Goodyear, Maricopa County, Arizona

32. Venue is proper because plaintiff resides in this judicial district, and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## Parties

33. Plaintiff Daniel Hiltz is a citizen of Sandwich, Kendall County, Illinois.

34. Defendant Inventure Foods, Inc., is a Delaware corporation with a principal place of business in Goodyear, Arizona, Maricopa County.

35. Defendant is a subsidiary of Utz, one of the largest potato snacks companies in the United States, which sells its products nationwide.

36. Defendant licenses the TGIFriday's name for its snack products.

37. The Product is sold to consumers from retail and online stores of third-parties, and online.

38. TGIFriday's is a national restaurant chain that is a leader and innovator in dining experiences, recognized by industry observers and consumers as responsible for popularizing "bar food," such as onion rings.

39. Plaintiff bought the Product at or exceeding the above-referenced price, on one or more occasions at one or more locations, including in 2020 and 2021, from stores including Casey's, 902 E Church St, Sandwich, IL 60548.

40. Plaintiff relied on the front label statement that the Product was an "Onion Snack[s]"

and contained a non-negligible amount of onion ingredients instead of onion seasoning or onion flavor.

41. Plaintiff did not expect corn meal with onion flavor.

42. Plaintiff chose between Defendant's Product and other similar products which disclosed they were merely onion-flavored and chose the former.

43. The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

44. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's representations are consistent with its capabilities and features.

## Class Allegations

45. The class will consist of all Illinois, Ohio, Texas, Virginia, Rhode Island and Florida residents who purchased the Product during the statutes of limitations for each cause of action alleged.

46. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

47. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

48. Plaintiff is an adequate representative because his interests do not conflict with other members.

49. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

50. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

6

51. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

52. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act<br>
("ICFA"), 815 ILCS 505/1, et seq.</u>

<u>(Consumer Protection Statute)</u>

53. Plaintiff incorporates by reference all preceding paragraphs.

54. Plaintiff and class members desired to purchase a product which had an appreciable amount of onion ingredients and expected a greater amount of onion ingredients.

55. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

56. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

57. Plaintiff relied on the representations.

58. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty,<br>
Implied Warranty of Merchantability and<br>
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

59. The Product was manufactured, labeled and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it was had an appreciable amount of onion ingredients and expected a greater amount of onion ingredients.

60. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

61. This duty is based on Defendant's outsized role in the market for this type of Product

– using the iconic TGIFriday's brand, associated across America and the world with bar food staples such as onion rings.

62. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

63. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

64. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

65. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

66. Defendant had a duty to truthfully represent the Product, which it breached.

67. This duty is based on defendant's position, holding itself out as having special knowledge and experience this area – a subsidiary of one of the most well-known snack companies – Utz – and custodian of the iconic TGIFriday's brand.

68. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant.

69. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

70. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

71. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that had an appreciable amount of onion ingredients and expected a greater amount of onion ingredients

72. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its composition and qualities.

### Unjust Enrichment

73. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;
3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;
4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;
5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: June 10, 2021

          Respectfully submitted,

          Sheehan & Associates, P.C.
          /s/Spencer Sheehan
          60 Cuttermill Rd Ste 409
          Great Neck NY 11021-3104
          Tel: (516) 268-7080
          Fax: (516) 234-7800
          spencer@spencersheehan.com