UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Daniel Hiltz, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>       - against -<br><br>Inventure Foods, Inc.,<br><br>                    Defendant | 1:21-cv-03140<br><br><br><br>First Amended Class Action Complaint<br><br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      Inventure Foods, Inc. ("defendant") manufactures, labels, markets, and sells baked cornmeal snacks under the TGIFriday's brand, labeled as "Onion Rings – Snacks" ("Product").



1

2. The representations include the statements and pictures of golden brown, round snacks, in the semblance of traditional onion rings

3. The representations are misleading because they give consumers the impression it contains a greater relative and absolute amount of the expected onion ingredients than it does.

**I.  CHANGES IN FOOD FORM AND COMPOSITION**

4. Up until the 1970s, onion rings were traditionally made from fresh onion bulbs sliced and separated into rings, coated with batter or breading, and fried in a suitable fat or oil bath.

5. So important was the use of fresh, sliced onions to onion rings, that the FDA even seized a product labeled "onion rings" which was made from chopped onions.

6. However, advances in technology, along with the goal of increasing profits, resulted in a number of convenience foods that had the appearance and names of the traditional foods, but are manufactured by new processes and with different forms and types of ingredients.

7. One group of these foods was made by chopping, grating, or otherwise reducing a food substance into small units, which are then formed or extruded ("restructured") into a uniform shape.

8. The restructured food would resemble the product traditionally made from either the whole product or a slice or segment of the product and not comminuted.

9. One examples of this type of food was potato chips made from dehydrated potatoes, instead of potato slices.

10. The most well-known example of this food is the Pringles brand of potato chips, with their uniform shape and unique cylinder packaging.

11. Fried clams traditionally made by breading a whole clam began to be made from chopped clam pieces, reassembled in semblance of whole fried clams.

12. Fish sticks traditionally made from segments of fish fillets began to be made from minced fish pieces formed into the shape of sticks.

13. The FDA concluded that unless the labeling of foods constructed in this manner clearly specifies that the product is made from chopped or small units of the food, the consumer may be led to believe that the product is made in the traditional manner with the same amount and type of ingredients.

## II. STATE AND FEDERAL REGULATIONS PROHIBIT PRODUCT FROM BEING IDENTIFIED AS "ONION RINGS"

14. Federal and identical state regulations require a product's front label to contain a common or usual name which accurately identifies or describes, "in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21 C.F.R. § 102.5(a); Illinois Food, Drug and Cosmetic Act ("IFDCA"), 410 ILCS 620/1 et seq.; 410 ILCS 620/21(j) ("federal [food labeling] regulation[s] [are] automatically adopted").

15. Defendant's representations violate 21 U.S.C. § 343(a)(1) and 410 ILCS 620/11, which deem a food misbranded when the label contains a statement that is "false or misleading."

16. The Illinois Consumer Fraud and Deceptive Business Practices Act provides protection for consumers purchasing items like the Product, and states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . are hereby declared unlawful

815 ILCS 505/2.

17. The FDA, based on public input and consumer interests, stated that "it would be inappropriate and misleading for a product made from comminuted onions to be labeled simply as 'onion rings.'"

3

18. The FDA enacted a regulation to prevent this deception, and to distinguish standard onion rings from an onion ring product made from fresh or dehydrated chopped[1] onions, shaped by an extruder into ring shapes, breaded, and baked or fried. *See* 21 C.F.R. § 102.39 ("Onion rings made from diced onion.").

19. This new type of onion ring – made from diced onions instead of intact slices from onion bulbs – were required by law to have a qualifying statement to inform consumers how they were different from the traditional version.

20. Where the onion rings were made from dehydrated comminuted onions, the product's name is required to be "onion rings made from dried diced onions." 21 C.F.R. § 102.39(a)(1).

21. Where the onion rings were made from non-dehydrated comminuted onions, the product's name is required to be "onion rings made from diced onions." 21 C.F.R. § 102.39(a)(2).

22. Whether or not onion rings were made from dehydrated onions was determined to affect the basic integrity of the food, which is why this information is required to be disclosed to consumers.

23. The qualifying phrase following the term "onion rings" was intended to distinguish the reconstructed onion product from the one made from sliced onion bulbs.

24. The qualifying terms – "'made from dried diced onions' or 'made from diced onions'" – must "immediately follow or appear on a line(s) immediately below the words 'onion rings' in easily legible boldface print or type in distinct contrast to other printed or graphic matter. 21 C.F.R. § 102.39(b).

25. The size of this qualifying statement must be "Not less than one-sixteenth inch in

---

[1] The FDA required the word "diced" to be used in place of synonyms like "chopped," "minced" or "comminuted," so consumers would not be confused by different terms.

4

height on packages having a principal display panel with an area of 5 square inches" or "Not less than one-half the height of the largest type used in the words 'onion rings.'" 21 C.F.R. § 102.39(b)(1)-(2).

26. By requiring this statement to be conspicuous and informative, consumers would not be misled about what they were buying.

### III. MISLEADING TO ADD "FILLERS" TO REPLACE ONION INGREDIENTS

27. The FDA was aware that companies would likely seek to reduce the amount of valuable onion ingredients in restructured onion ring products, through the use of fillers and extenders, in addition to the usual breading.

28. In these situations, a product purporting to be "onion rings" is required to be identified as "onion and _____ rings," the blank to be filled in with the significant characterizing ingredient other than onions, e.g., cereal, corn, soy, etc.

29. The FDA emphasized that the addition of a significant amount of characterizing ingredients or extenders to a food identified as "onion rings" "would make the product adulterated and misbranded, unless labeling" on the front of the package disclosed this fact.

### IV. DEFENDANT'S REPRESENTATIONS ARE MISLEADING

30. Defendant's Product is identified as "Onion Rings," without any of the required qualifying terms. 21 C.F.R. § 102.39(b)(1)-(2).

31. Nowhere on the front label does the Product state it is made with dehydrated, comminuted onions, as required.

32. In fact, under FDA labeling requirements, the characterizing component of the Product is "Enriched Corn Meal," shown on the ingredient list as the first and most predominant ingredient by weight.

> **INGREDIENTS:** ENRICHED CORN MEAL [CORN, FERROUS SULFACE, NIACIN, THIAMINE MONONITRATE, RIBOFLAVIN, FOLIC ACID] SOYBEAN OIL AND/OR SUNFLOWER OIL, MINCED ONION, RICE FLOUR, SALT, WHEY, MONOSODIUM GLUTAMATE, CORN OIL, BUTTERMILK POWDER, CARAMEL COLOR, NATURAL FLAVORS, CORN SYRUP SOLIDS, MALTODEXTRIN, SODIUM CASEINATE, LACTIC ACID, DISODIUM INOSINATE, DISODIUM GUANYLATE, YELLOW #5 LAKE, TURMERIC EXTRACT (COLOR), CANOLA OIL, ARTIFICIAL FLAVOR, BHT AND PROPYL GALLATE (TO HELP PROTECT FLAVOR), CALCIUM CARBONATE.

33. The second most predominant ingredient is vegetable oil, "Soybean Oil and/or Sunflower Oil."

34. The third most predominant ingredient is "Minced Onion," followed by "Rice Flour."

35. Consumers purchasing a product labeled as "Onion Rings" will expect it contains an appreciable amount of onion ingredients, instead of only "minced onions."

36. Onions are approximately four times more expensive than corn, per pound.

37. Consumers are promised more valuable onion ingredients but get a product that is almost exclusively made from lower valued corn ingredients.

38. Based on an investigation into industry practices for production of this type of product, the "Minced Onion" is dehydrated prior to being incorporated into the Product.

39. "Minced Onion" is a seasoning typically found in the "spice" section of a grocery store.

6

40. Minced onions are onion pieces cut into pieces about 1/8" or 1/16" in diameter.

41. This is the smallest size without cutting food into a pulp or puree.

42. Minced onion is used for providing an onion "flavor" to a product.

43. Minced onions cannot provide the health and nutrition benefits provided by real onions.

44. Onions contain fiber and dietarily significant amounts of vitamins C and B6, folate and potassium.

45. Minced onion lacks the nutritive value of actual onions, as shown by products sold commercially as "minced onions," where all the nutrient values are zero.



46. Though the Product's front label states "Natural and Artificially Flavored," this is in a very small font size, and difficult for consumers to view.

 

47. This statement – if consumers look very closely without straining their eyes – fails to put consumers on notice that the Product is identified in a deceptive way.

48. For example, many kinds of potato chips are labeled as natural or artificially flavored.

49. However, such statements do not cause consumers to believe they are not buying potato chips.

50. Moreover, minced onions and added flavoring, disclosed on the ingredient list, are unable to match the flavor from real onions because they lack the delicate balance of flavonoids critical to onions.

51. Typically, only a part of an onion will be subjected to mincing.

52. However, each part of an onion – bulb, root, stem, and skin – contributes unique flavor and aroma compounds, which means dehydrated, minced onions are often unable to provide the onion taste appreciated by consumers.

8

53. Consumers will incorrectly believe the faux-onion taste is due to having more onion ingredients when this is not true.

54. Defendant knows consumers will pay more for the Product because the front label only states "Onion Snacks" instead of "artificially flavored fried corn snacks" or "contains non-appreciable amount of real onions."

55. The Product contains caramel coloring which makes it a darker brown, giving the to consumers of *more* onions, since the color is a darker brown than it otherwise would be, similar to the color of onions.

## V. CONCLUSION

56. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of the Product, relative to itself and other comparable products or alternatives.

57. The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

58. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

59. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

60. The Product is sold for a price premium compared to other similar products, no less than $2.19 per 2.75 OZ bag, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

## Jurisdiction and Venue

61. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28

U.S.C. § 1332(d)(2).

62. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

63. Plaintiff Daniel Hiltz is a citizen of Illinois.

64. Defendant Inventure Foods, Inc. is a Delaware corporation with a principal place of business in Goodyear, Maricopa County, Arizona.

65. Plaintiff and defendant are citizens of different states. 28 U.S.C. § 1332(d)(2).

66. Venue is in this district because plaintiff resides in this district and the actions giving rise to the claims occurred within this district.

67. Venue is in the Eastern Division because plaintiff resides in Kendall County, which is where the events giving rise to the present claims occurred.

## Parties

68. Plaintiff Daniel Hiltz is a citizen of Sandwich, Kendall County, Illinois.

69. Defendant Inventure Foods, Inc., is a Delaware corporation with a principal place of business in Goodyear, Arizona, Maricopa County.

70. Defendant is a subsidiary of Utz, one of the largest potato snacks companies in the United States, which sells its products nationwide.

71. Defendant licenses the TGIFriday's name for the Onion Rings product.

72. TGIFriday's is a national restaurant chain that is a leader and innovator in dining experiences, recognized by industry observers and consumers as responsible for popularizing "bar food," such as onion rings.

73. The Product is sold to consumers by third-parties at thousands of retail locations – grocery stores, drug stores, big box stores, convenience stores, etc. – and online.

74. Plaintiff bought the Product on one or more occasions at one or more locations, including in 2020 and 2021, from stores including Casey's, 902 E Church St, Sandwich, IL 60548.

75. Plaintiff relied on the front label statement that the Product was "Onion Rings" and contained a non-negligible, appreciable amount of onion ingredients instead of minced onion, used for seasoning.

76. Plaintiff did not expect a baked corn meal snack with added onion flavor.

77. Plaintiff wanted more than an "onion taste," which he nevertheless failed to receive, due to the de minimis amount of onion ingredients, and the inability of compounds from dehydrated, minced onions, and added natural and artificial flavoring, to provide an authentic onion taste.

78. Plaintiff bought the Product at or exceeding the above-referenced price.

79. Plaintiff relied on the representations identified here.

80. Plaintiff would not have purchased the Product if he knew the representations were false and misleading.

81. Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

82. The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

83. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's representations are consistent with its composition.

Class Allegations

84. Plaintiff seeks certification under Fed. R. Civ. P. 23(b)(2) and (b)(3) of the following

classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged.
>
> **Consumer Fraud Multi-State Class:** All persons in the States of Iowa and Arkansas who purchased the Product during the statutes of limitations for each cause of action alleged.[2]

85. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

86. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

87. Plaintiff is an adequate representative because his interests do not conflict with other members.

88. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

89. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

90. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

91. Plaintiff seeks class-wide injunctive relief because the practices continue.

---

[2] The States in the Consumer Fraud Multi-State Class are limited to those States with similar consumer fraud laws under the facts of this case: Iowa (Consumer Fraud and Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714.16 et seq.); Arkansas (Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, et. seq.).

<u>Illinois Consumer Fraud and Deceptive Business Practices Act</u>
("ICFA"), 815 ILCS 505/1, et seq.

(Consumer Protection Statute)

92. Plaintiff incorporates by reference all preceding paragraphs.

93. Plaintiff and class members desired to purchase a product that contained an appreciable amount of onion ingredients, instead of mainly corn ingredients with added onion flavor.

94. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

95. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

96. Plaintiff relied on the representations.

97. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Violation of State Consumer Fraud Acts</u>

<u>(On Behalf of the Consumer Fraud Multi-State Class)</u>

98. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

99. Defendant intended that plaintiff and each of the other members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

100. As a result of defendant's use or employment of artifice, unfair or deceptive acts or business practices, plaintiff, and each of the other members of the Consumer Fraud Multi-State

Class, have sustained damages in an amount to be proven at trial.

101. In addition, defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

102. The Product was manufactured, labeled, and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it contained an appreciable amount of onion ingredients, instead of mainly corn ingredients with added onion flavor.

103. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

104. This duty is based on Defendant's outsized role in the market for this type of Product.

105. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

106. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

107. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

108. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

109. Defendant had a duty to truthfully represent the Product, which it breached.

110. This duty is based on defendant's position, holding itself out as having special knowledge and experience this area, as custodian of the TGIFriday's brand.

14

111. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a nationally recognized and trusted brand.

112. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

113. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

114. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it contained an appreciable amount of onion ingredients, instead of mainly corn ingredients with added onion flavor

115. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

### Unjust Enrichment

116. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: September 7, 2021

    Respectfully submitted,

    Sheehan & Associates, P.C.
    /s/Spencer Sheehan
    60 Cuttermill Rd Ste 409
    Great Neck NY 11021
    Tel: (516) 268-7080
    spencer@spencersheehan.com